**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| HARLEY-DAVIDSON CREDIT CORP., | CASE NO. 5:12-cv-01864 EJD |
| Plaintiff(s), | **ORDER GRANTING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER** |
| v. | |
| MONTEREY MOTORCYCLES, INC., et. al., | [Docket Item No(s). 7] |
| Defendant(s). | |

Presently before the court is Plaintiff Harley-Davidson Credit Corp.'s ("Plaintiff") ex parte motion for a temporary restraining order ("TRO") against Defendants Monterey Motorcycles, Inc. ("Monterey"), Judson V. Dabney, II, Roger B. Gilbert, Lester O. Veik, and Kyle Dalton (collectively, "Defendants"). For the reasons explained below, Plaintiff's motion will be granted.

**I.   BACKGROUND**

This is a dispute between a local Harley-Davidson dealer and its floor-plan lender. On or about February 27, 2007, Plaintiff and Monterey entered into a Customer Financing Agreement ("CFA"). See Compl., Docket Item No. 1, at ¶ 11. Pursuant to the CFA, Plaintiff extended credit to Monterey for the purchase of goods and services for sale at its location in Salinas, California. See id. The CFA also obligated Plaintiff to send monthly statements to Monterey identifying all amounts payable and imposing a due date for payment. See id., at Ex. A, ¶ 2(e). As security for the extension of credit, the CFA provided Plaintiff with a purchase money security interest in the

1
Case No. 5:12-cv-01864 EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER

majority of Monterey's inventory. See id., at ¶ 12. Continuing guarantys were executed in 2007 and 2011 by Monterey's principals: Dabney, Veik, Gilbert, and Dalton. See id., at ¶¶ 13-16.

In the summer of 2011, Plaintiff discovered that Monterey had created "sales out of trust" - or sales of inventory to retail buyers without first paying off the principal and interest owed to Plaintiff - in excess of $225,000.00 in addition to past-due debts under the CFA in excess of $40,000.00. See id., at ¶ 19. Although an SOT constitutes a default under the CFA's terms, Plaintiff worked with Monterey to become current on its past-due debts and remain open for business. See id., at ¶¶ 18, 20. Part of this effort included a forbearance agreement between Plaintiff and Monterey on August 5, 2011, in which Plaintiff agreed to forego enforcement of its rights under the CFA in exchange for Monterey's promise to pay the amount it owed to Plaintiff. See id., at ¶ 21. According to Plaintiff, a central consideration in assenting to the forbearance agreement was Monterey's representation that the dealership would soon be sold. See id., at ¶ 22.

After the forbearance agreement, Monterey continued to default on payments and create additional SOTs. See id., at ¶ 26. Plaintiff also learned that the dealership would not be sold, contrary to Plaintiff's prior representation. See id., at ¶ 23. An audit of Monetery conducted at Plaintiff's direction on February 23, 2012, revealed that Monterey had sold 11 motorcycles without registering the warranties, presumably in an effort to hide the sales from Plaintiff. See id., at ¶ 32. Another audit on April 5, 2012, revealed that an additional 15 motorcycles were sold without Plaintiff's knowledge. See id., at ¶¶ 34, 36. In response to Plaintiff's inquiry about the sales, Dalton indicated that the sales proceeds had been used to pay other creditors, including a $55,000.00 paid to consignment sellers at the impetus of the local district attorney. See id., at ¶ 36.

As of April 11, 2012, Monterey and its principals owe Plaintiff $703,574.62. See id., at ¶ 52.

## II. LEGAL STANDARD

The standard for issuing a TRO is the same as that for the issuance of preliminary injunction. See New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co., 434 U.S. 1345, 1347 n.2 (1977). A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). "The proper legal standard for preliminary injunctive relief requires a party to demonstrate

1  (1) 'that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the
2  absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an
3  injunction is in the public interest." <u>Stormans, Inc. v. Selecky</u>, 586 F.3d 1109, 1127 (9th Cir. 2009).

4  As a corollary to this test, the Ninth Circuit has also found a preliminary injunction
5  appropriate if "serious questions going to the merits were raised and the balance of the hardships tips
6  sharply in the plaintiff's favor," thereby allowing preservation of the status quo where complex legal
7  questions require further inspection or deliberation. <u>Alliance for the Wild Rockies v. Cottrell</u>, 622
8  F.3d 1045, 1049 (9th Cir. 2010).

9  "These formulations are not different tests but represent two points on a sliding scale in
10 which the degree of irreparable harm increases as the probability of success on the merits
11 decreases." <u>Big Country Foods, Inc. v Board of Educ. of the Anchorage School Dist</u>., 868 F.2d
12 1085, 1088 (9th Cir. 1989). But "[u]nder either formulation, the moving party must demonstrate a
13 significant threat of irreparable injury, irrespective of the magnitude of the injury." <u>See</u> <u>id</u>.

### III.   DISCUSSION

16 Through this motion, Plaintiff seeks to enjoin Defendants from further liquidating the
17 inventory subject to Plaintiff's security interest and argues that it has made a sufficient showing
18 under the applicable test. Plaintiff further believes that a temporary restraining order is properly
19 issued without notice to Defendants.

20 Taking up the latter issue first, the court may issue a TRO without notice only if: "(A)
21 specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable
22 injury, loss, or damage will result to the movant before the adverse party can be heard in opposition;
23 and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons
24 why it should not be required." Fed. R. Civ. Proc. 65(b)(1). There are limited circumstances which
25 justify an ex parte TRO, including "where notice to the adverse party is impossible either because
26 the identity of the adverse party is unknown or because a known party cannot be located in time for
27 a hearing," or where "notice to the defendant would render fruitless the further prosecution of the
28 action." <u>American Can Co. v. Mansukhani</u>, 742 F.2d 314, 322 (7th Cir. 1984); <u>Reno Air Racing</u>

Ass'n, Inc. v. McCord, 452 F.3d 1126, 1131 (9th Cir. 2006).

To that end, Plaintiff has provided the affidavits of two of its employees, Aly Ely, a vice president, and Mark LaMendola, an operations manager. See Docket Item Nos. 5, 6. Both Ely and Mendola confirm the allegations that Monterey continued to create SOTs and sell inventory without Plaintiff's knowledge between February 2, 2012, and April 5, 2012. See Decl. of Al Ely ("Ely Decl."), Docket Item No. 6, at ¶¶ 11, 13; see also Decl. of Mark LaMendola ("LaMendola Decl."), Docket Item No. 5, at ¶¶ 14, 17. In his own affidavit, Plaintiff's counsel avers that the recent increase in Monterey's surreptitious sales activity provides sufficient reason to forego the notice requirement because "Defendants will continue to destroy [Plaintiff's] security interest in the collateral," thereby causing Plaintiff further irreparable harm. See Decl. of Daniel C. Fleming ("Fleming Decl."), Docket Item No. 7, at ¶¶ 4, 5. These three declarations demonstrate that providing advance notice to Defendants may render this litigation fruitless since Defendants could use that time to further dissipate inventory. Thus, the court will excuse Plaintiff of providing notice to Defendants under these circumstances.

Looking now to the possibility of irreparable injury, the court agrees with Plaintiff that it will continue to be injured absent a TRO. Plaintiff essentially alleges that Defendants are likely to dissipate assets, which would then become unavailable even if Plaintiff obtained a money judgment from this litigation. Indeed, Defendants have shown an predilection to do so even after specifically agreeing to refrain from such conduct. Although pure economic loss alone is not normally sufficient to the issuance of a TRO, the possibility that a defendant will dissipate assets which could satisfy a judgment can constitute irreparable harm. See In re Focus Media Inc., 387 F.3d 1077 (9th Cir. 2004) (holding the prospect of dissipating assets "raises the specter of irreparable harm to the bankruptcy estate if these funds are not frozen."). The court finds that the strong possibility of continued asset dissipation supports the issuance of a TRO. See Johnson v. Couturier, 572 F.3d 1067, 1085 (9th Cir. 2009) ("A party seeking an asset freeze must show a likelihood of dissipation of the claimed assets, or other inability to recover monetary damages, if relief is not granted.").

Plaintiff has also demonstrated likely success on the merits and that the balance of equities tip in Plaintiff's favor. The instant action is one based primarily on a Defendants' breach of a

1  written contracts, each of which Plaintiff has attached to the Complaint, and it seems Defendants
2  have actually admitted to breaching the terms of the CFA and the forbearance agreement. See
3  LaMendola Decl., at ¶ 19. In addition, issuance of a TRO serves the overarching public interest of
4  enforcing contracts.

5  Since Plaintiff has made a sufficient showing, the court finds Plaintiff is entitled to a TRO.
6  Accordingly, the court issues the following order which contains some, but not all, of the injunctive
7  provisions proposed by Plaintiff.

### IV. ORDER

9  Based on the foregoing, Plaintiff's ex parte application for a TRO is GRANTED such that,
10 pending the hearing on the Order to Show Cause:

11  1. Defendants are restrained and enjoined from leasing, selling, transferring, consigning,
12 auctioning, dissipating, concealing, pledging, granting a security interest in, or otherwise disposing
13 of any motorcycles, parts, accessories, Motorclothes, collectibles, and other good bought with funds
14 provided pursuant to or with an extension of credit granted under the CFA entered between the
15 parties (the "Collateral").

16  2. Defendants are restrained and enjoined from removing the Collateral from the
17 showroom and/or lot upon which Monterey operates, conducts sales, and/or has its principal place of
18 business, which lot and showroom are commonly known as 333 N. Main Street, Salinas, California,
19 93901, and which lot includes, for the purposes of this Order, any adjacent, appurtenant or remote
20 sites used to store or warehouse the Collateral.

21  3. Defendants are restrained and enjoined from any willful acts or purposeful
22    omissions
23 of ill-treatment, misuse, destruction, damage or other devaluing of the Collateral.

24  4. Due to the nature of the issues presented by this action, the court dispenses with the
25 bond requirement contained in Federal Rule of Civil Procedure 65(c) but may revisit this issue
26 should circumstances so require;

27  4. This TRO is effective on upon the date and time of filing and shall remain in effect
28 until the date of hearing on preliminary injunction specified below.

5. Plaintiff shall forthwith serve Defendants, or their resident agent, or their counsel, with a copy of this Order. Such service shall be completed no later than **April 19, 2012.**

Defendants are further ORDERED to show cause why they should not be preliminarily enjoined as set out in Plaintiff's motion. Defendants shall file a written response, if any, to this Order to Show Cause and Plaintiff's application on or before **April 24, 2012**. Plaintiff may file a reply to Defendants' response on or before **April 26, 2012**.

Plaintiff's motion for preliminary injunction will be heard on **April 27, 2012, at 2:00 p.m.** in Courtroom 4, 5th Floor, at the United States District Court located at 280 S. 1st Street in San Jose.

**IT IS SO ORDERED.**

Dated: April 16, 2012

EDWARD J. DAVILA
United States District Judge